**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| KAREN WIITANEN, individually<br>And on behalf of other persons<br>similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>MIDLAND FUNDING LLC;<br>MIDLAND CREDIT<br>MANAGEMENT, INC.;<br>ENCORE CAPITAL GROUP, INC.;<br>and WELTMAN, WEINBERG &<br>REIS CO., L.P.A.,<br><br>    Defendants. | Case No. 17-cv- 534<br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1. Plaintiff Karen Wiitanen, a visually impaired person, brings this action, individually and on behalf of other persons similarly situated, against Defendant Midland Funding LLC, Midland Credit Management, Inc., Encore Capital Group, Inc., (collectively the "Midland Defendants"), and Weltman, Weinberg & Reis Co., L.P.A. in that despite being enjoined by the Government nevertheless filed a time barred state court lawsuit against Plaintiff, and the debt was previously settled in full years prior to the state court lawsuit being filed against Plaintiff.

2. Defendants violated the Fair Debt Collection Practices Act, ("FDCPA") and mirror state law, the Michigan Regulation of Collection Practices Act, M.C.L. § 445.251, et seq., ("MRCPA"), in attempting to collect a debt to file a debt collection lawsuit in state court against Plaintiff that was time barred.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. §1692k (FDCPA), 28 U.S.C. § 1367(a) (supplemental jurisdiction).

4. Venue and personal jurisdiction over Defendants in this District is proper because:

a. Plaintiff resides in the District; and

b. Defendants caused to be filed the subject lawsuit against Plaintiff within Ionia County located within the District.

## PARTIES

5. Plaintiff is a natural person who resides Ionia County located within this District. Plaintiff is visually impaired and receives social security benefits.

6. Midland Funding, LLC is a wholly-owned subsidiary of Encore Capital Group, Inc.

7. Midland Credit Management, Inc. is a wholly-owned subsidiary of Encore Capital Group, Inc.

8. Midland Funding is engaged in the business of taking title to charged-off consumer debts, including credit card, auto deficiency and telecom receivables purchased from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios. (Encore's SEC filing on form 10-Q, Aug. 8, 2008).

9. Midland Funding frequently files state civil lawsuits to collect debts using affidavits that state that Midland Credit Management, Inc. is the servicer of the debt account.

10. Encore's webpage has stated that, "Encore Capital Group is a leading provider of debt management and recovery solutions for consumers and property owners across a broad

range of assets. Through its subsidiaries, the company purchases portfolios of consumer receivables from major banks, credit unions, and utility providers, and partners with individuals as they repay their obligations and work toward financial recovery."

11.     Encore's webpage has stated that, "If you are one of our consumers, you probably know us as Midland Credit Management. Midland Credit Management is an Encore Capital Group subsidiary [.]" * * * "If you have received a letter or phone call from us, seen our name on your credit report, or received a letter or phone call from a law firm or collection agency acting on our behalf, it means that your obligation (credit card, auto loan, consumer loan, home or cell phone bill, student loan) to a lender is now your obligation to Midland, as a result of our agreement with that lender. Please give us a call or log into our site to create a repayment arrangement or discuss the status of your account."

12.     According to Encore's November 1, 2012 10-Q filing with the SEC:

Encore Capital Group, Inc. ("Encore"), through its subsidiaries (collectively, the "Company") * * * purchases portfolios of defaulted consumer receivables and manages them by partnering with individuals as they repay their obligations and work toward financial recovery. Defaulted receivables are consumers' unpaid financial commitments to credit originators, including banks, credit unions, consumer finance companies, commercial retailers, auto finance companies, and telecommunication companies, which the Company purchases at deep discounts.

*Id.*, p. 5.

13.     Defendants "Midland, MCM . . . are wholly-owned subsidiaries of Encore Capital and share common officers and directors with Encore Capital.  Midland and MCM operate in concert with one another, and under the direct supervision and control of Encore Capital, to purchase and collect Consumer Debt on a massive scale."  *In the Matter of: Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., et al.*, 2015-CFPB-0022,

3

Doc. 1, Consent Order, p. 5 (CFPB Sept. 9, 2015) *available at* http://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf.

14. Encore Capital Group Midland Funding, LLC, and Midland Credit Management, Inc., each are a "debt collector" under the FDCPA as they each are "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" under 15 U.S.C. § 1692a(6). *See Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870, 880 (N.D. Ill 2009); *see also Miller v. Midland Credit Mgmt., Inc.*, 621 F. Supp. 2d 621, 634-35 (N.D. Ill. 2009); *see also Hernandez v. Midland Credit Mgmt., Inc.*, No. 04 C 7844, 2007 U.S. Dist. LEXIS 16054, 2007 WL 2874059, at *14-16 (N.D. Ill. Sept. 25, 2007); *see also Jackson v. Midland Funding, LLC,* 754 F. Supp. 2d 711, 715 n. 5 (D. N.J. 2010) *aff'd* 468 Fed. Appx. 123; 2012 U.S. App. LEXIS 3025 (3d Cir. 2012) (unpublished).

15. Weltman, Weinberg & Reis Co., L.P.A. regularly files state court lawsuits seeking to collect a debt that is in default at the time of the filing of the lawsuit on behalf of its clients and therefore is a debt collector. *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995); *Carpenter v. Monroe Fin. Recovery Group, LLC*, 119 F. Supp. 3d 623, 630 (E.D. Mich. 2015); *see also Glazer v. Chase Home Fin. LLC,* 704 F.3d 453, 461 (6th Cir. 2013); *see also Kistner v. Law Office of Michael P. Margelefsky, LLC,* 518 F.3d 433, 438 (6th Cir. 2008).

16. Weltman, Weinberg & Reis Co., L.P.A. a "regulated person" under the MCPA. *Carpenter v. Monroe Fin. Recovery Group, LLC*, 119 F. Supp. 3d 623, 630 (E.D. Mich. 2015); *see Misleh v. Timothy E. Baxter & Assocs.*, 786 F. Supp. 2d 1330, 1338 (E.D. Mich. 2011); MCL 445.251(g)(xi) (includes within the definition of "regulated person" an "attorney handling claims and collection on behalf of a client and in the attorney's own name.")

17. Defendant Midland Funding LLC uses one or more instrumentality of interstate commerce or the mails in a business where its principal purpose is the collection of debts.

18. Defendant Midland Credit Management, Inc. uses one or more instrumentality of interstate commerce or the mails in a business where its principal purpose is the collection of debts.

19. Defendant Encore Capital Group, Inc. uses one or more instrumentality of interstate commerce or the mails in a business where its principal purpose is the collection of debts.

20. Defendant Weltman, Weinberg & Reis Co., L.P.A. uses one or more instrumentality of interstate commerce or the mails in a business where its principal purpose is the collection of debts.

**FACTS**

21. According to Dell Inc.'s 10-Q SEC filing on 12/3/12, "Dell" is Dell Inc. individually and together with its consolidated subsidiaries, and:

> Dell offers or arranges various financing options and services for its business and consumer customers in the U.S. and Canada through Dell Financial Services ("DFS"). DFS's key activities include the origination, collection, and servicing of customer receivables primarily related to the purchase of Dell products and services.
>
> *Id.*, p. 12.
>
> * * *
>
> Dell makes credit decisions based on proprietary scorecards, which include the customer's credit history, payment history, credit usage, and other credit agency-related elements.
>
> *Id.*, p. 15.
>
> * * *

> Dell transfers certain U.S. customer financing receivables to Special Purpose Entities ("SPEs") which meet the definition of a Variable Interest Entity ("VIE") and are consolidated into Dell's Condensed Consolidated Financial Statements.

*Id.*, p. 16.

22. On or around May of 2007, Plaintiff first purchased a Dell computer for personal use and made subsequent personal purchases thereafter.

23. In conjunction with Plaintiff's order and each subsequent order, Dell Inc., agreed to provide goods to Plaintiff and through that same transaction with Dell Inc., Plaintiff's purchase of goods was financed.

24. This financing process is similar to those done by an automobile dealership, where the dealership sells the good and arranges financing for the buyer.

25. On information and belief, Dell placed the financing of Plaintiff's purchase for goods with Dell Financial Services LLC ("DFS") and per DFS' agreement with CIT Bank, within two days from the date of the loan's origination CIT transferred title of the loan back to DFS.

26. On information and belief, DFS then placed the loan in a special purpose entity that then transferred the loan to another entity that DFS had an interest in through its related entities and partners, including Dell Inc.

27. DFS then serviced the loan and caused to be sent to Plaintiff at least one monthly billing statement.

28. Plaintiff made at least one monthly payment directly to DFS for the benefit of Dell, Inc., for her financed purchases.

29. No debtor – creditor relationship existed between Plaintiff and CIT Bank. Plaintiff did not have any direct contact with CIT Bank.

30.     Upon information and belief, CIT Bank sold accounts, including Plaintiff's account, to WebBank. DFS was the servicer of the accounts for both CIT Bank and WebBank.

31.     No payment was made by Plaintiff in relation to the amount financed for her Dell purchase on or after December 21, 2011.

32.     At a point in time before May 31, 2011, Plaintiff was in default.

33.     On information and belief, on or around October 17, 2017, the subject debt was automatically initially charged off.

34.     To the best of Plaintiff's recollection, on or around December 2011, she paid $1,000 to settle the subject account in full.

35.     At some point in time, DFS, as a part of a portfolio of nonperforming account receivables, sold Plaintiff's debt to Midland Funding, LLC.

36.     On June 13, 2016, Plaintiff was sued in the case captioned, <u>Midland Funding LLC v. Karen Wiitanen</u>, 16-0874-GC, in the State of Michigan, 64-A Judicial District (the "state court matter").

37.     A redacted true and correct copy of that complaint in the state court matter and all of the attachments is attached hereto as (Exhibit A).

38.     Defendants Midland Funding LLC, Midland Credit Management, Inc., Encore Capital Group, Inc., entered into a Consent Order in Administrative Proceeding File No 2015-CFPB-0022, *In the Matter of: Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., et al.*

39.     The Consent Order states, in relevant part:

> Encore, Encore's officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from:

7

>> a. Collecting or attempting to collect any Time-Barred Debt through litigation or arbitration[.]

*In the Matter of: Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., et al.*, 2015-CFPB-0022, Doc. 1, Consent Order, p. 38 (CFPB Sept. 9, 2015).

40. Defendant Encore was ordered to require that new and renewed contracts with law firms mandate that the law firm had a duty to alert Encore when there was an "assertion that the suit was filed outside of the applicable statute of limitations." *In the Matter of: Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., et al.*, 2015-CFPB-0022, Doc. 1, Consent Order, pp. 38-43 (CFPB Sept. 9, 2015).

41. Despite being enjoined by the Government, Encore, the Midland entities and their attorneys still file time barred lawsuits against consumer in Michigan, even on a debt approximately 9 years in default, *e.g. Ford v. Midland Funding, LLC et al.,* 16-cv-12612-TBG-SDD (E.D. Mich.) (Berg, J.).

42. Ms. Wiitanen, though her attorney filed an Answer, as amended on August 5, 2016, in which she raised as an affirmative defense, "accord and satisfaction" and that the "claims are barred by the applicable statute of limitations." (Exhibit B).

43. On August 5, 2016, Midland Funding, LLC, though Weltman, Weinberg & Reis, filed a Motion for Summary Disposition under MCR 2.116 (C) (9) and (10) and a brief in support. (Exhibit C).

44. On September 12, 2016, at a hearing on the pending motions before the state court, the state court judge dismissed the matter without prejudice, (Exhibit D), over Ms. Wiitanen's counsel's objection. (Exhibit E).

45. Plaintiff has suffered actual financial damages as a result of the state court matter being filed against her.

## COUNT I – TIME BARRED COLLECTION LAWSUIT
## CLASS CLAIM

46. Plaintiff incorporates paragraphs 1-45 above.

15 U.S.C § 1692e, in pertinent part, provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \*

(2) The false representation of --

(A) the character, amount, or legal status of any debt. . . .

\* \* \*

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

\* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

47. The FDCPA broadly prohibits unfair or unconscionable collection methods including filing suit on a time barred debt.  See e.g. *Murray v. CCB Credit Services, Inc.*, 04 C 7456, 2004 U.S. Dist. LEXIS 25361, 2004 WL 2943656, at \*2 (N.D. Ill. Dec. 15, 2004) ("[A] violation of the FDCPA occurs if the attempt to collect the time-barred debt is accompanied by a threat to sue, or if litigation has actually begun."); *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 616 (N.D. Ill. 2001);  *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987).  Therefore, Plaintiff and the class members have a legal substantive right of not being sued on a time barred debt.

48. Defendants' conduct likewise violated MCL 445.252(e) and MCL 445.252(f)(ii).

49. Defendants' conduct for the purpose of the state law claim was willful.

50. The subject debt and all debts like it that were incurred for purchases from Dell where Dell arranged the financing, were subject to the Uniform Commercial Code, and therefore subject to a 4-year statute of limitations.

51. Defendants' conduct related to the state court matter violated 15 U.S.C §§ 1692e(2)(A), e(5) and e(10).

52. In defending the state court matter, Plaintiff incurred out of pocket actual damages.

## CLASS ALLEGATIONS

53. A complaint need not define the class rather, "the obligation to define the class falls on the judge's shoulders" who may ask the parties' assistance. *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (*citing* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 23(c)(1); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 20011).

54. On information and belief, the class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 similarly situated persons as Plaintiff who were sued on a time barred debt originating with the same creditor.

55. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common question is whether Plaintiff and the class members were sued on a time barred debt.

56. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained legal counsel experienced in handling class actions brought under the FDCPA.

57. A class action is an appropriate method for the fair and efficient adjudication of this controversy.

### COUNT II – ATTEMPTING TO COLLECT A DEBT NOT OWED
### INDIVIDUAL CLAIM

58. Plaintiff incorporates paragraphs 1-45 above.

59. 15 U.S.C § 1692e, in pertinent part, provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (2) The false representation of --
>
>    (A) the character, amount, or legal status of any debt. . . .
>
> * * *
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

60. Defendants' conduct likewise violated MCL 445.252(e) and MCL 445.252(f)(ii).

61. Defendants' conduct for the purpose of the state law claim was willful.

**WHEREFORE**, Plaintiff requests that the Court to enter an order that this matter may proceed as a class action, appoint Plaintiff as the class representative and enter any incentive award deemed reasonable by the Court for Plaintiff's services as the class representative, find Defendants each to have violated the FDCPA and MRCPA enter a judgment in favor of Plaintiff and a certified class for statutory damages, actual damages and attorney's fees and costs of suit

as allowed by the FDCPA and the MRCPA, along with injunctive relief under the MRCPA.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner (P59915)
WARNER LAW FIRM, LLC
350 S. Northwest HWY, Ste. 300
(847) 701-5290 (TEL)
cwarner@warner.legal

B. Thomas Golden (P70822)
GOLDEN LAW OFFICES, P.C.
21860 W. Main St., P.O. Box 9
Lowell, MI 49331
(616) 897-2900 (TEL)
btg@bthomasgolden.com

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner (P59915)
WARNER LAW FIRM, LLC
350 S. Northwest HWY, Ste. 300
(847) 701-5290 (TEL)
cwarner@warner.legal

B. Thomas Golden (P70822)
GOLDEN LAW OFFICES, P.C.
21860 W. Main St., P.O. Box 9
Lowell, MI 49331
(616) 897-2900 (TEL)
btg@bthomasgolden.com